UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY ETHERLY,

Plaintiff,

v.

REHABITAT SYSTEMS OF MICHIGAN, DAMON HUFFMAN, and CAROL BENCE,

Defendants.

Case No. 13-11360

Honorable Paul D. Borman
Magistrate Judge Laurie J. Michelson

_______________________________________/

**REPORT AND RECOMMENDATION TO (1) GRANT DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS IN LIEU OF RESPONSE TO PLAINTIFF'S *MOTION TO STRIKE DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES* [45]; AND (2) DISMISS AS MOOT PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES [44]**

This is an employment discrimination case in which *pro se* Plaintiff Tammy Etherly alleges that her former employer Rehabitat Systems of Michigan ("Rehabitat"), its Chairman of the Board and Vice President Damon Huffman, and its President and Board member Carol Bence created a hostile work environment and ultimately terminated her because of her race.

After experiencing several service of process issues, Defendants were effectively served on November 21, 2013. (Dkts. 38-40.) On December 3, 2013, Defendants filed an Answer with affirmative defenses. (Dkt. 41.) All pretrial matters were referred to this Court on December 4, 2013. (Dkt. 42.) On December 13, 2013, Plaintiff filed a motion to strike Defendants' Answer and affirmative defenses for non-compliance with the notice requirements of Rule 12(f). (Dkt. 44.) On December 27, 2013, Defendants filed a Motion to Compel Arbitration and to Dismiss in Lieu of Response to Plaintiff's *Motion to Strike Defendants' Answer and Affirmative Defenses*, alleging that arbitration is the proper forum for Plaintiff's claims. (Dkt. 45.)

The Court has carefully considered the relevant briefing and pleadings, and will dispense with oral argument. *See* E.D. Mich. LR 7.1(f)(2). Because arbitration is the proper forum for Plaintiff's claims, the Court **RECOMMENDS** that Defendants' Motion (Dkt. 45) be **GRANTED**. In light of this conclusion, the Court also **RECOMMENDS** that Plaintiff's Motion to Strike Defendants' Answer and Affirmative Defenses (Dkt. 44) be **DISMISSED** as moot.

## I. BACKGROUND

According to Plaintiff's Complaint, Rehabitat "is a business in Michigan, which provides comprehensive residential services specializing in the treatment of cognitively, physically and mentally impaired adults." (Dkt. 1, Compl. ¶ 1.)[1] Plaintiff, an African-American female, began working for Rehabitat on September 17, 2007. (*Id*. ¶ 25.) Her general duties included food preparation and cooking, client bathing and grooming, transportation, housekeeping and laundry, and medication distribution. (*Id*. ¶ 27.) On October 1, 2005, Rehabitat established a comprehensive "Alternative Dispute Resolution Policy and Procedure for Conflicts/Claims Resolution" for disputes with its employees ("Arbitration Agreement"). (Dkt 45, Defs.' Mot. to Dismiss at 4; *see also* Defs.' Mot. to Dismiss Ex. 1 at Pg. ID 202-03.) As part of a revised Employee Handbook, on January 17, 2012, Plaintiff signed an "Acknowledgment of Agreement to Arbitrate." (Defs.' Mot. to Dismiss Ex. 1 at Pg. ID 204.) The relevant portion of the Acknowledgment provides:

> The parties acknowledge and understand that, in exchange for continued employment at the Company, any and all disputes, controversies or claims by an employee that the Company violated any state or federal statu[t]e including discrimination/civil rights claims or Michigan common law doctrine or committed any tort or breach of contract arising from employment with the Company or

[1] The company web site identifies the full name as "Rehabitat Systems of MI, Inc." *See* http://www.rehabitatsystems.com/ (last visited February 24, 2014).

> termi[nat]ion of such employment relationship, shall be submitted to and settled by arbitration in Flushing Township, Genesee County of the State of Michigan, pursuant to the rules then in effect of the American Arbitration Association, as set forth above (Please see Personnel Director for approved form).

(*Id*.)

Plaintiff alleges that "Defendants brought several discipline actions against [her] on and after May 24, 2012 in an effort to build up reasoning which [would] warrant a wrongful discharge." (Compl. ¶ 32.) On July 24, 2012, while Plaintiff was still employed by Rehabitat, Defendants informed Plaintiff that the "corporate labor attorney"of "Employees Only, Inc.," "would be available as a mediator for the arbitration," if Plaintiff "would feel that he would be impartial." (Dkt. 48, Pl.'s Resp. Ex. A, at Pg. ID 223.)

Plaintiff's employment with Rehabitat was terminated on August 7, 2012. (Compl. ¶ 92.) After her termination, on August 9, 2012, Plaintiff faxed Defendants a letter stating that she could not accept the proposed mediator, and suggested that they have the American Arbitration Association ("AAA") provide a list of names. (Pl.'s Resp. Ex. B, at Pg. ID 224.) It appears that Defendants never responded to this suggestion. (*See* Pl.'s Resp. Exs. C & D, at Pg. ID 227, 228.)

Plaintiff filed charges with the Michigan Department of Civil Rights and the U.S. Equal Employment Opportunity Commission ("EEOC") on November 13, 2012. (Compl. at ¶ 95.) The EEOC closed its file on December 31, 2012, and gave Plaintiff the right to sue based on the charge within 90 days. (Compl. Ex. 1 at Pg. ID 23.)

On January 7, 2013, Plaintiff wrote a letter to Defendants in which she reminded them that she had proposed that AAA provide a mediator. (Pl.'s Resp. Ex. C at Pg. ID 227.) She stated, "Since

that time, I received no[] correspondence of any kind in this matter." (*Id.*) She informed Defendants that she intended to file a lawsuit in federal court pursuant to her EEOC right to sue letter, and said, "I extend to you a final opportunity to bring about a mutually agreed upon resolution which must be received by January 18, 2013." (*Id.*)

On January 22, 2013, an attorney responded to Plaintiff purportedly on Defendants' behalf, stating that Defendants would defend any lawsuit on the basis of the Arbitration Agreement and proposing "a possible resolution of this matter without litigation and/or arbitration." (Pl.'s Resp. Ex. D at Pg. ID 228.) Plaintiff engaged in settlement talks with the lawyer over the next few months. (*See* Pl.'s Resp. at Pg. ID 212; Pl.'s Resp. Ex. E at Pg. ID 229-30.)

Plaintiff filed this lawsuit on March 27, 2013, just before the expiration of the 90-day period following her right to sue letter from the EEOC. (*See* Dkt. 49 at Pg. ID 216; Compl. Ex. 1 at Pg. ID 23.) The summonses were issued on May 6, 2013, after Plaintiff's petition to proceed *in forma pauperis* was granted. (*See* Dkts. 5-9.)

On May 14, 2013, Defendants mailed and emailed a letter to Plaintiff informing her that they were "no longer using" the attorney with whom she had been communicating, and that "[h]e had no authority from us to speak to you or your legal representative regarding settlement." (Pl.'s Resp. Ex. F at Pg. ID 231-32; Pl.'s Ex. G at Pg. ID 241-43.) Defendants attached a copy of a state court complaint "that will be filed against you." (Pl.'s Resp. Ex. F at Pg. ID 231.) The complaint alleged malicious prosecution and several other claims, including breach of contract for violation of the Arbitration Agreement. (*Id.* at Pg. ID 234-40.) Defendants' letter stated, "We want to resolve this in accord with the Rules of the American Arbitration Association and suggest that this is the best way to resolve our differences." (*Id.* at Pg. ID 232.) Alternatively, Defendants suggested: "[W]e

could also call it a day and go home without suing each other. . . . I will keep these two options open until 12:00 noon on Friday May 17, 2013. If I don't hear from you in writing then I will consider that you have refused our offer and want to be sued." (*Id.* at Pg. ID 232.)

Then on May 16, 2013, Defendants wrote another letter to Plaintiff demanding that she retract the allegations made in her federal complaint, dismiss the case, and "pursue your claims in accord with the Employee Handbook . . . ," quoting the Arbitration Agreement. (Pl.'s Resp. Ex. H at Pg. ID 245-46.)

On May 20, 2013, Defendants filed a complaint against Plaintiff in state court. *See* Register of Action, Genesee County 7th Circuit Court, http://www.co.genesee.mi.us/roaccsinq/ROACase.aspx?CASE=13100455&CASETYP=CK&FILENAME=C022801017 (last visited Feb. 28, 2014).[2] At the time, Defendants were evading service of Plaintiff's complaint in this case. (*See* Dkt. 33, Order Granting Plaintiff's Motion for Alternate Service, at 2-3.) After the Court granted Plaintiff's motion for alternate service and Defendants were finally served, they filed an Answer and Affirmative Defenses, including reliance on the Arbitration Agreement, on December 3, 2013. (Dkt. 41, at Pg. ID 135.) Ten days later, on December 13, Plaintiff filed a motion to strike Defendants' Answer and Affirmative Defenses. (Dkt. 44.) Two weeks after that, Defendants filed the present motion to dismiss and to compel arbitration. (Dkt. 45.)

## II. ANALYSIS

Despite a federal policy favoring arbitration, Plaintiff makes several arguments that the Arbitration Agreement is not valid: (1) continued employment cannot form the basis for acceptance of the Arbitration Agreement; (2) she did not knowingly or voluntarily waive her right to a jury trial;

---

[2] Plaintiff's motion to dismiss the complaint was granted in July 2013.

(3) because Defendants are not engaged in interstate commerce, the exception in 9 U.S.C. § 1 applies; (4) the Arbitration Agreement does not contain the procedural safeguards required by Michigan law; and (5) Defendants have waived their right to rely on the Arbitration Agreement. (Pl.'s Resp. at 5-11.) The Court does not find merit in these arguments and recommends that the parties be compelled to arbitration in accordance with the terms of their Agreement.

**A. The Legal Standard**

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, provides that a written provision in a contract "to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This section of the FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (internal citation and quotation omitted). When presented with an issue that is referable to arbitration pursuant to a valid arbitration agreement, the court, upon the application of either party, must stay the suit and compel arbitration. 9 U.S.C. § 3.

Arbitration under the FAA is "a matter of consent, not coercion." *Albert M. Higley, Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006) (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). A party "cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 813 (6th Cir. 2008) (quoting *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005)). Thus, a court should not "override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is

implicated." *EEOC v. Waffle House, Inc*., 534 U.S. 279, 294 (2002).

Nonetheless, in determining the scope of an agreement to arbitrate, "any doubts . . . should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24-25 (1983). "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960).

**B. Validity and Scope of the Arbitration Agreement**

"[W]hether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court." *City of Detroit Pension Fund v. Prudential Sec. Inc.*, 91 F.3d 26, 30 (6th Cir. 1996); *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 208 (1991). In determining whether to compel arbitration, a court asks two questions: (1) did the parties enter into a valid and enforceable agreement to arbitrate, and (2) do the claims asserted fall within the scope of the arbitration agreement. *Johns v. Sterling Jewelers, Inc*., No. 06-14327, 2006 WL 3759905, *1 (E.D. Mich. Dec. 20, 2006) (citing *AT&T Techs. Inc. v. Comms. Workers of Am.*, 475 U.S. 643, 649 (1986)).

*1. Validity of the Agreement*

a. Continued Employment

Plaintiff first challenges the validity of the Arbitration Agreement because it did not contain an opt-out provision. (*Id*. at 119.) Plaintiff agues that because she was already an employee, without an opt-out provision there can be no offer and acceptance. (*Id.* at 119-20.) In other words, continued employment cannot form a valid basis for acceptance, according to Plaintiff. But the Sixth Circuit,

applying Michigan law, has found that an arbitration agreement may be accepted though continued employment. *See Dawson v. Rent-A-Center, Inc.*, 490 Fed. App'x 727, 730 (6th Cir. 2012) (holding plaintiff "demonstrated his assent [to his employer's offer to arbitrate disputes] by continuing to work for Rent-Way" and "Michigan law permitted parties to accept offers through conduct," citing *Pakideh v. Franklin Commercial Mortg. Group, Inc.*, 213 Mich. App. 636, 540 N.W.2d 777, 780 (1995)). Under Michigan law, Plaintiff's continued employment at Rehabitat after signing the Acknowledgment of Agreement to Arbitrate in January 2012 demonstrated her assent.

b. Jury Trial

Plaintiff also claims that the Agreement is not valid because she did not waive her right to a trial by jury. (Pl.'s Resp. at Pg. ID 220-21.) The burden is on Etherly to show that she did not voluntarily and knowingly waive her right to a jury trial. *See Tillman v. Macy's, Inc.*, 735 F.3d 453, 461 (6th Cir. 2013). In determining whether there has been a knowing and voluntary waiver of a prospective civil rights claim, a court considers the following five factors:

> (1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had the opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances.

(*Id*. (quoting *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003))). Plaintiff does not argue that her experience, background, or education limit her ability to understand the parties' Arbitration Agreement. Moreover, this Court has reviewed Plaintiff's *pro se* pleadings and submissions to this Court and those documents reveal that she is capable of understanding the documents at issue in this case. Regarding the second factor, Plaintiff does not indicate whether she consulted with a lawyer, but the Arbitration Agreement indicates that Rehabitat's President, Carol

Bence, signed the Acknowledgment of Agreement to Arbitrate on January 12, 2012. (Dkt. 45, Defs.' Mot. To Dismiss at Pg. ID 221.) Plaintiff did not sign the Acknowledgment until five days later on January 17, 2012. (*Id*.) Absent anything in the record that suggests Plaintiff was required to immediately sign the Arbitration Agreement when it was presented to her, the Court infers from the dates on the Agreement that Defendants gave Plaintiff ample time to review it before she signed the Acknowledgment. Facts weighing against Plaintiff's arguments were discussed in a similar case and apply here: "Plaintiff did not request extra time to consider the Employee Agreement or to contact a lawyer. Moreover, Plaintiff did not indicate to Defendant he did not understand . . . any portion of the Employee Agreement." *Moore v. Ferrellgas, Inc*., 533 F. Supp. 2d 740, 749 (W.D. Mich. 2008.) Third, the Arbitration Agreement sets forth the procedures for resolving "all disputes, controversies or conflicts/claims with their employees." (Defs.' Mot. at Pg. ID 202.) The Arbitration Agreement contemplates a four-step mandatory process whereby "any and all conflicts/claims must be submitted to and settled." (*Id*.) While the Agreement does not specifically indicate that an employee cannot bring his or her claims to a jury, it provides that "any and all conflicts" will be resolved through a mandatory four-step alternative dispute resolution process. (*Id.*) This is not as clear a waiver of the employee's rights as the Court would like. Nonetheless, the Sixth Circuit "has flatly rejected the claim that an arbitration agreement must contain a provision expressly waiving the employee's right to a jury trial," because it is "a necessary and fairly obvious consequence of an agreement to arbitrate." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 506 (6th Cir. 2004). Regarding the fourth factor, and as discussed above, there was adequate consideration for the waiver in Plaintiff's continued employment with Rehabitat.

Taking all of these factors together, Plaintiff has not satisfied her burden to show that she

did not knowingly and voluntarily waive her right to a jury trial. Moreover, "[i]f the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes." *Cooper*, 367 F.3d. at 506 (quotation marks and citations omitted).

c. 9 U.S.C. § 1 Exception

Plaintiff also claims that the Federal Arbitration Act (FAA) should not apply because Rehabitat is not involved in interstate commerce and therefore she should be able to take advantage of the "engaged in commerce" exception found in 9 U.S.C. § 1. (Pl.'s Resp. at Pg. ID 217.) That exception provides that the FAA does not apply to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. According to Plaintiff, "Rehabitat is a Michigan corporation that provides comprehensive residential services specializing in the treatment of cognitively, physically, and mentally impaired adults." (*Id*.) The Supreme Court has held that "the FAA's 'engaged in commerce' exception should be narrowly construed to apply only to 'transportation workers' and not to employment contracts in general." *Circuit City v. Adams*, 532 U.S. 105, 119 (2001); *see also Hill v. Rent-A-Ctr., Inc.*, 398 F.3d 1286, 1289 (11th Cir. 2005) (holding that the "engaged in commerce" exception was not intended to apply to "workers who incidentally transported goods interstate as part of their job in an industry that would otherwise be unregulated"). Plaintiff's employment with Rehabitat does not fall within that narrow definition, so it is not excluded from the FAA.

d. Procedural Safeguards

Plaintiff additionally claims that the Agreement is not valid because it does not contain the procedural safeguards required by Michigan law. (Pl.'s Resp. at Pg. ID 217-18 (citing *Rembert v. Ryan's Family Steakhouse, Inc.*, 226 Mich. App. 821 (1997)).) Specifically, Plaintiff claims that the

Agreement does not provide (1) clear notice that she is waiving her right to file a lawsuit instead of arbitrating her claims; (2) the right to be represented by a lawyer; (3) a neutral arbitrator; (4) reasonable pre-hearing discovery, which may include depositions; (5) a "fair arbitral hearing," which may include the issuance of subpoenas by the arbitrator and the right to summon witnesses; and (6) a written arbitral award that contains "findings and conclusions of law." (Pl's Resp. at Pg. ID 217-18.)

Contrary to Plaintiff's suggestion, however, the Agreement provides all of the procedural safeguards required by Michigan law. First, the Agreement does indicate that "Any and all conflicts and claims must be submitted to and settled in accord with the policies and procedures" of the conflict resolution four-step process, which includes completing two grievance steps, a non-binding mediation, and finally if no resolution is achieved, the parties agree to submit their claims to mandatory dispute resolution in accordance with the Rules and Regulations of the American Arbitration Association ("AAA"). (Defs.' Mot. at Pg. ID 202-03.) Although as discussed above this is not as clear a waiver of rights as the Court would prefer, it does provide notice that the employee is agreeing to submit claims to the alternative dispute resolution process. *Cf. Cooper*, 367 F.3d at 506 (refusing to require express "waiver" language in arbitration agreement to waive the right to a jury trial).

Second, the Agreement allows Plaintiff the right to elect "to be represented by an attorney or other representative of [her] choice." (*Id*. at 203.) The Agreement further provides that "[t]he parties shall mutually select a neutral arbitrator who is licensed to practice law in the State of Michigan." (*Id*.) Regarding pre-hearing discovery, the Agreement provides that "[e]ach party shall have the right to pre-hearing discovery in the time and manner provided by the then-applicable

Michigan Court Rules. Each party shall also have the right to subpoena witnesses and documents for the arbitration hearing." (*Id*.) The Agreement also provides that "[a]t least thirty (30) days before the arbitration hearing the parties must exchange witnesses, including any experts and copies of all exhibits intended to be used at the arbitration hearing." (*Id*.) The Agreement is to be held in accordance withe Model Employment Arbitration Procedures of the AAA in effect at the time written notice of the claim is given. (*Id*.) The arbitrator also is required under the terms of the Agreement to render "a written decision setting forth findings of fact and conclusions of law . . . as to the claims or disputes at issue." (*Id*.) The Court also finds significant that Defendants "will pay the fees of the arbitrator except that portion that is equal to the current civil filing fee in federal court." (*Id*.) And, if Plaintiff prevails on her statutory claim that entitles her to attorney fees, nothing in the Agreement prevents the arbitrator from awarding those fees. (*Id*.)

For all of these reasons, this Court finds that the arbitration procedures are fair. *See also Francis v. AT&T Mobility LLC*, No. 07-14921, 2009 WL 416063, at *5 (E.D. Mich. Feb. 18, 2009) ("AT&T's arbitration process is fair to the extent that Francis can effectively enforce his individual [Michigan Consumer Protection Act] rights in AAA arbitration . . . . Francis does not argue that the AAA's arbitration process is inherently unfair." (citing *Rembert v. Ryan's Family Steak Houses, Inc.*, 235 Mich. App. 118, 156, 596 N.W.2d 208 (1999))).

e. Waiver

Finally, Plaintiff claims that because Defendants have not complied with the terms of the Arbitration Agreement, they have waived their right to arbitrate. (Pl.'s Resp. at 216-17.) Plaintiff specifically argues that Defendants have failed to accept or decline Plaintiff's suggestion to use AAA to provide an arbitrator, failed to file a motion to compel arbitration, filed a complaint in

Genesee County Circuit Court, and failed to settle the case. (*Id*.)

The Sixth Circuit has held that "[a]n agreement to arbitrate may be waived by the actions of a party which are completely inconsistent with any reliance thereon," such as "by delaying its assertion to such an extent that the opposing party incurs actual prejudice." *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002) (finding right to arbitrate waived where party waited 17 months to assert it after default judgment was entered) (quotation marks and citation omitted). But "waiver of the right to arbitration is not to be lightly inferred," because "[t]here is a strong presumption in favor of arbitration." *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003).

The Court is concerned that Defendants have not been straightforward in their dealings with Plaintiff. The more appropriate course of action would have been to accept service and immediately file a motion to compel arbitration, rather than evading service and filing a complaint in another court for breach of the Arbitration Agreement. The Court cannot say that Defendants' actions are inconsistent with their intent to arbitrate, since they consistently referred to the Agreement and talked about arbitrating. But it does appear to be just talk, with a great deal of delay and without meaningful action. And there does appear to be some prejudice to Plaintiff: Defendants' delay seems to have forced Plaintiff to file this lawsuit because her EEOC right to sue letter was about to expire, and Plaintiff undoubtedly expended time and money both in prosecuting this lawsuit and defending the state court action. But the Court is inferring this prejudice; Plaintiff has not developed the argument or provided an affidavit to establish the underlying facts. Nor is it clear that the delay was entirely on the side of Defendants; Plaintiff has not alleged that she made more than one attempt to contact Defendants before filing charges with the EEOC.

In *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, the Sixth Circuit found that defendant JDHP had not waived its right to arbitration by declining to arbitrate in a letter sent shortly after the dispute began. 350 F.3d at 574. The Court reasoned:

> If JDHP had not immediately invoked the arbitration clause upon the commencement of litigation, or if JDHP had frustrated the arbitration process upon commencement by [plaintiff] Wellmont, Wellmont may have had a better argument for waiver. . . . But that is not what happened in this case. JDHP's July 2001 letter was sent during pre-commencement negotiations. It really amounts to nothing more than the typical posturing that may occur where one party is attempting to "stare down" the other party in the hope that the other party will simply give up.

350 F.3d at 574. Here, Defendants filed their motion to compel arbitration shortly after they were finally served. Although the Court does not condone Defendants' tactics, "[g]iven the strong preference in favor of arbitration and against waiver, we cannot infer a waiver of arbitration based solely on the parties' conduct at [an early] stage of their dispute." *Id.*

*2. Scope of the Agreement*

A federal court must also determine whether the asserted claims fall within the scope of the arbitration policy. The Arbitration Agreement provides that "any and all disputes, controversies or claims by an employee that the Company violated any state or federal statue including discrimination/civil rights claims or Michigan common law doctrine or committed any tort or breach of contract arising from employment with the Company or termi[nat]ion of such employment relationship, shall be submitted to and settled by arbitration . . . ." (Defs.' Mot. at Pg. ID 204.) Plaintiff does not argue that her claims do not fall within the scope of the Agreement, and based on the plain language of the Agreement and Plaintiff's Complaint, the Court finds that her claims fall within the Agreement's scope.

## III. CONCLUSION

Because arbitration is the appropriate forum for Plaintiff's claims, the Court **RECOMMENDS** that Defendants' Motion (Dkt. 45) be **GRANTED**. In light of this conclusion, the Court also **RECOMMENDS** that Plaintiff's Motion to Strike Defendants' Answer and Affirmative Defenses (Dkt. 44) be **DISMISSED** as moot.

## IV. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated: March 4, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 4, 2014.

s/Jane Johnson
Deputy Clerk